UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATRINA EDMUNDSON o/b/o J.D.,

        Plaintiff,

v.                                            Case No.  8:10-cv-675-T-26TBM

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

       The Plaintiff seeks judicial review of the denial of her child's claim to continued

Supplemental Security Income ("SSI") payments.  Because the decision of the Commissioner

of the United States Social Security Administration is in accordance with the correct legal

standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

       On October 11, 2000, the claimant, J.D., was found disabled as of May 4, 2000.[1]  On

September 13, 2004, it was determined that the claimant, who was then four years of age, was

no longer disabled and that SSI benefits would cease.  (R. 82-85, 211).  The determination

was upheld on reconsideration and the Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ").  The initial hearing was conducted February 22, 2008, but was postponed

_____

      [1]It appears the most recent favorable decision was based on the finding that J.D.'s condition medically equaled the listing at 102.02 (impairments of visual acuity).  *See, e.g.,* (R. 211).

on Plaintiff's request so she could obtain legal representation.  (R. 597-605).  The *de novo* hearing was rescheduled for April 2, 2008.  Plaintiff and claimant again appeared without a representative.  Plaintiff acknowledged the prior discussions concerning representation and signed a waiver of representation form.

J.D. testified first.  She was then eight years old and in the first grade.  She claimed to be doing well in school taking regular classes.  She stated that she had friends at school and at home and she got along well with them.  She also stated that she did her own personal care and helped with chores at home.  She can ride a bike and run, but not for too long because her legs and stomach hurt.  She said that she was taking medicine for a cold and because she throws up.  J.D. denied needing help for any activities.  (R. 610-15).

Plaintiff, Katrina Edmundson, J.D.'s mother, testified next.  According to her, J.D. has improved but still has complications.  Plaintiff testified that J.D. suffers from vertigo and is dizzy and has headaches on occasion.  She uses an inhaler because she suffers bronchitis and asthma.  She wears glasses to help her vision.  Her left vocal chord is paralyzed and she has bad reflux so she has to be careful when she eats or she throws up.  She take Prevacid for the reflux.  She also takes a stool softener to help with bowel movements.  She is repeating the first grade.  She has problems concentrating and comprehending.  Plaintiff and her son help J.D. with her homework.  According to a doctor, J.D. needs speech and physical therapy.  By the mother's account, J.D. acts up at school, has temper tantrums, and goes off-task.  She has problems with math and reading.  She needs tutoring.  Because of her heart surgery, she

cannot lift her left arm all the way.  J.D. weighs 60 pounds and is below normal on the growth chart.  (R. 615-23).

Also before the ALJ were school records and medical records outlining J.D.'s medical history.  These matters are addressed herein as necessary.

By his decision of May 16, 2008, the ALJ determined that medical improvement occurred as of September 1, 2004.  While J.D. suffered colobama left eye and status post aorta coarctation repair, the ALJ found that she no longer met or equaled the listing at 102.02 and did not medically meet or equal any listing.  As for whether she *functionally* met or equaled a listing since that date, the ALJ made the following findings about the six pertinent domains for consideration: J.D. had no limitation in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating with others, and no limitation in the ability to care for herself.  Further, he found that while J.D. was somewhat limited, she had less than a marked limitation in moving about and manipulating objects, and less than a marked limitation in health and physical well-being.  Thus, because her impairments had not resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one such domain, the ALJ found that J.D. did not functionally meet the listings as of September 1, 2004.  Upon these findings, the ALJ concluded that J.D.'s disability ended as of September 1, 2004.  (R. 22-36).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

For a claimant under the age of eighteen to be entitled to Supplemental Security Income payments, the claimant must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. Under the applicable regulations, the Commissioner employs a three-step evaluation process to determine disability in a child. First he determines whether the child is engaged in substantial gainful activity. If not, the next determination is whether the child has a severe impairment or combination of impairments. If so, the Commissioner must then determine whether the impairment or combination of impairments meet *or* is medically *or* functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement. Where the claimant fails to satisfy any of the criteria, she will be found not disabled. Where each of these requirements is satisfied, the child will be found disabled. 20 C.F.R. §§ 416.924-416.926a; *Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999). Here, it appears that J.D. was found disabled as of October 2000, at which time she was six months old, upon a finding that her bilateral coloboma[2] with visual inattentiveness medically equaled listing 102.02 (loss of visual acuity). *See* (R. 22, 211, 264, 337).

---

[2]"Coloboma describes conditions where normal tissue in or around the eye is missing from birth." www.nei.nih.gov/health/coloboma/factsaboutcoloboma.pdf (last visited July 29, 2011). J.D. also was diagnosed with charge syndrome, which ". . . is a disorder that affects many areas of the body. [It] stands for coloboma, heart defect, atresia choanae (also known as choanal atresia), retarded growth and development, genital abnormality, and ear abnormality. . . ." http://ghr.nlm.nih.gov/condition/charge-syndrome (last visited July 29, 2011).

Subsequently, on continuing disability review in 2004,[3] the Social Security Administration ("SSA") determined that J.D.'s impairments had improved such that she was no longer disabled.  *See id.*  In continuing disability cases involving children, the Commissioner uses a three-step medical improvement review standard ("MIRS") sequential evaluation process outlined in 20 C.F.R. § 416.994a.  The Commissioner first determines whether there has been medical improvement in the impairments the child had at the time of the most recent favorable determination, i.e., the comparison point date ("CPD").  20 C.F.R. § 416.994a(b)(1); Social Security Ruling ("SSR") 05–03p, 2005 WL 1041037, at * 1 (S.S.A. Apr. 27, 2005).  If there has been medical improvement, the Commissioner next considers whether the impairments the child had at the time of the CPD still meet, or medically or functionally equal the severity of the listing applicable at that time.  20 C.F.R. § 416.994a(b)(2); SSR 05-03p.  If they do not, the Commissioner proceeds to consider whether the child's current impairments, including any the child did not have at the time of the earlier most recent favorable decision, are disabling under the same rules used to make the initial determination of disability.  20 C.F.R. § 416.994a(b)(3); SSR 05–03p.  A favorable finding at any of the three steps concludes the review in the child's favor.

A determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

---

[3]A child who has been found disabled must periodically undergo a continuing disability review to determine if she is still eligible for benefits.  20 C.F.R. § 416.994a(a).

5

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983);.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

6

III.

The Plaintiff raises three claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  Remand and reversal demanded with an immediate award of benefits-no change in condition, Claimant still meets equivalent of listing;

(2)  Remand and reversal demanded with an immediate award of benefits-failure to fully develop the record; and

(3)  Remand and reversal demanded with an immediate award of benefits-functional equivalent of a listing.

(Doc. 10).

As an initial matter, I note that Plaintiff relies on evidence that was not before the ALJ but which was submitted to the Appeals Council.  This evidence includes: (1) a 2009 evaluation/report from a school psychologist; (2) a school form completed by J.D.'s pediatrician in 2009 wherein he reported that J.D.'s current diagnosis was Charge Syndrome, and he checked off that J.D.'s condition significantly limited her ability to move about, sit or manipulate the materials required for learning, and recommended that the school system evaluate J.D. for physical and occupational therapy and treat as indicated; (3) a similar school form that is not signed or dated but indicates that J.D. is legally blind in her left eye; (4) radiology reports from January 2009 that indicated J.D. had scoliosis and that her left femur was shorter than her right femur; (5) prescriptions for riboflavin and phenergran, dated May 2009; and (6) a prescription for a physical therapy evaluation and treatment, dated February

7

2009. (R. 560-94). She also cites to a notation on a "Consultant Review Sheet" wherein an unknown person acknowledged J.D. was doing better but asked whether there was "any way to continue w/what we have" because she still had significant problems.[4]

The Eleventh Circuit and the Commissioner's regulations set forth the standard for considering evidence first submitted to the Appeals Council. The Appeals Council must consider "new, material, and chronologically relevant evidence and must review the case if 'the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Comm'r of Soc. Sec.,* 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.970(b)); *see* 20 C.F.R. § 416.1470(b).[5] The Appeals Council may deny review if, even in the light of the new evidence, it finds no error in the opinion of the ALJ. *Ingram,* 496 F.3d at 1262. The Appeals Council's decision to deny review in light of new evidence is subject to judicial review. *Pritchett v. Comm'r Soc. Sec.*, No. 08-14714, 2009 WL 449177, *6 (11th Cir. Feb. 24, 2009)[6] (citing *Falge v. Apfel,* 150 F.3d 1320, 1324 (11th Cir. 1998)). On such review, the court is directed to "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in

---

[4]This document was also before the ALJ. *See* (Doc. 264).

[5]Section 416.1470(b) states "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."

[6]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

making its decision whether to review an ALJ's decision."[7] *Id.* The reviewing court must [then] determine "whether the Appeals Council correctly decided that the 'administrative law judge's action, findings, or conclusion is [not] contrary to the weight of the evidence . . ..'" *Ingram* 496 F.3d at 1266-67 (quoting 20 CFR § 404.970(b)).[8] Where the reviewing court finds that the Appeals Council incorrectly decided that the ALJ's decision to deny benefits was not contrary to the weight of the evidence, ". . . the appropriate course 'is to remand the matter to the Commissioner so that the administrative review that was improperly denied is undertaken.'" *Samuels v. Astrue*, Case No. 3:08-cv-900-J-HTS, 2009 WL 1659620 at * 2 (M.D. Fla. June 15, 2009) (quoting *Tucker v. Astrue*, Case No. 8:07-cv-621-T-TGW, 2008 WL 2811170 at * 7 (M.D. Fla. July 21, 2008)). Conversely, where the reviewing court finds that the Appeals Council correctly decided that the ALJ's decision to deny benefits was not contrary to the weight of the evidence, the Commissioner's decision will be affirmed.

Because it appears that Plaintiff challenges the decision of the ALJ to deny benefits and the decision of the Appeals Council to deny review, *see* (Doc. 10 at 1), Plaintiff's claims

---

[7]New evidence is material when "a reasonable possibility exists that the new evidence would change the administrative result." *Falge*, 150 F.3d at 1324.

[8]*See also Piccuito v Astrue*, No. 8:08-cv-2481-T-TGW, 2009 WL 5148922, at *4 ("[W]hen the Appeals Council considers new evidence and denies review, the district court . . . should determine whether the Appeals Council has correctly decided that the [ALJ's] findings are not contrary to the weight of all the evidence."); *Lee v. Astrue*, Case No. 3:08-cv-458-J-HTS, 2009 WL 1393503 at *2 (M.D. Fla. May 18, 2009) (finding that if new evidence is presented to the Appeals Council and review is denied, a reviewing court should determine whether the denial by the Appeals Council was erroneous because the ALJ's decision was contrary to the weight of the evidence in the entire record).

are addressed within this framework.  *See Ingram*, 496 F.3d at 1266.  Each of the claims are addressed in turn.

By her first claim, Plaintiff challenges the finding that J.D.'s condition no longer medically (or functionally) equaled listing 102.02.[9]  According to Plaintiff, J.D.'s condition has not changed and thus it still meets the equivalent of listing 102.02.  In support, Plaintiff points to (1) a report of a so-called medical consultant wherein the consultant stated that J.D.'s benefits should continue, and (2) the 2009 school psychologist's evaluation wherein it was noted that J.D.'s second grade teacher stated there were numerous learning difficulties affecting J.D.'s ability to function and these problems go back to the first grade, that J.D. had twenty-nine absences in the second grade, that J.D. had repeated the first grade, and that J.D. had numerous medical problems that affected her ability to learn.  According to Plaintiff, that evidence pertains to the time period adjudicated by the ALJ and demonstrates that there has not been any improvement in J.D.'s condition.  As a result, Plaintiff urges the court to find that there has been no change or improvement in J.D.'s overall condition, that J.D. continues to meet the equivalent of listing 102.02, and that J.D.'s benefits should not have been stopped.  At a minimum, Plaintiff urges that the case should be remanded in light of the evidence she submitted to the Appeals Council.  (Doc. 10 at 3-5).

The Commissioner counters that substantial evidence supports the ALJ's finding that J.D.'s impairments no longer met or medically equaled listing 102.02.  In particular, the

---

[9]It is not clear whether Plaintiff is challenging the ALJ's decision or the Appeals Council's decision or both.  Furthermore, to the extent Plaintiff challenges the decision on functional equivalence beyond the CPD date within this claim, it is addressed below.

Commissioner contends that record evidence shows that J.D.'s vision in her better eye was

approximately 20/70 in November 2004 and 20/30 in October 2005, evidence which is at odds

with listing 102.20, which generally requires an individual to show that her vision is 20/200 or

less in the better eye, and although J.D. had problems with depth perception no evidence

supports a listing equivalence.  In further support, the Commissioner notes that the state

agency consultants opined that J.D.'s vision had improved such that she did not meet or

medically equal a listed impairment.  As for Plaintiff's reliance on a notation by a SSA

employee on a "Consultant Review Sheet" form, the Commissioner notes that the state agency

consultants to whom the employee likely directed the question concluded that the evidence

did not provide a basis for finding J.D. disabled.  In sum, the Commissioner contends that

Plaintiff fails to show that J.D.'s impairments met or medically equaled listing 102.02 or any

other listed impairment.  (Doc. 11 at 5-7).

Resolution of this claim depends on whether substantial evidence supports the ALJ's

determination that J.D.'s bilateral coloboma with visual inattentiveness improved such that

the condition no longer met or medically or functionally equaled the listing at 102.02 and

whether the Appeals Council was correct in concluding that the ALJ's finding in this regard

was not contrary to the weight of the evidence.  Because the answer to both is yes, Plaintiff's

claim fails.

Medical improvement means a decrease in the medical severity of the child's

impairments that were present at the time of the most recent favorable decision.  20 C.F.R.

§ 416.994a(c).  A determination that there has been a decrease in the medical severity must be

based on changes (improvements) in the symptoms, signs, or laboratory findings associated with the impairments.  *Id.*  Signs, symptoms, and laboratory findings may include any abnormalities of physical and mental functioning that were used in making the most recent favorable decision.  *Id.* at § 416.994a(c)(2).  If there has been medical improvement, the ALJ must then consider whether the impairments the child had at the time of the most recent favorable determination or decision now meets or medically or functionally equals the severity of the listing it met or equaled at that time.[10]  *Id.* at § 416.994a(a)(1), (b)(2).

In this case, J.D. was found disabled because her coloboma with resulting visual inattentiveness was found to have medically equaled listing 102.02.  That listing, as it existed in 2000, stated:

> A.   Remaining vision in the better eye after best correction is 20/200 or less; or
>
> B.   For children below 3 years of age at time of adjudication:
>
>    1.   Absence of accommodative reflex (see 102.00A for exclusion of children under 6 months of age);[11] or

---

[10]"In making this decision, we will consider the current severity of the impairment(s) present and documented at the time of our most recent favorable determination or decision, and the same listing section used to make that determination or decision as it was written at that time, even if it has since been revised or removed from the Listing of Impairments."  20 C.F.R. § 416.994a(b)(2).

[11]An accommodati[on] reflex is "the coordinated changes that occur when the eye adapts itself to near vision; constriction of the pupil, convergence of the eyes, and increased convexity of the lens."  http://medical-dictionary.thefreedictionary.com/accommodation+reflex (last visited Aug. 8, 2011).

2.      Retrolental fibroplasia with macular
        scarring or neovascularization; or

3.      Bilateral congenital cataracts with
        visualization of retinal red reflex only
        or when associated with other ocular
        pathology.

20 C.F.R. Pt. 404, Subpt. P, App 1, § 102.02 (2000).[12]  Where the plaintiff claims an

impairment that equals one of the listed impairments, she must present medical evidence

which describes how the impairment has such an equivalency.  S*ee Bell v. Bowen*, 796 F.2d

1350, 1353 (11th Cir. 1986) (addressing listing equivalence in adult case).  To "equal" a

listing, "the medical findings must be 'at least equal in severity and duration to the listed

findings.'"  *Wilson*, 284 F.3d at 1224 (addressing listing equivalence in adult case).

Here, the most recent favorable decision was rendered on October 11, 2000.  (R.

211).  At that time, J.D. was six months old and found disabled on the basis of medically

equaling listing 102.02.  (R. 211, 339).  The listing equivalence was based on the specific

findings that J.D. was "diagnosed with bilateral coloboma and was reported to be 'visually

inattentive,'" and the doctor opined "that her visual acuity was 'reduced although exact level

unknown.'"[13]  (R. 211).  It was also documented that J.D. had coloboma of the optic nerves,

bilaterally, and "blindness."  (R. 337).  Thus, while the section of listing 102.02 that J.D.'s

---

[12]As indicated above, the listing as it was written at the time of the CPD is used.  *See*
20 C.F.R. § 416.994a(b)(2); SSR 05-3p, at *2.

[13]Other findings noted at the time were that J.D. was born prematurely, she had a
history of coarctation of the aorta and had repair done in April 2000 and additional surgery in
June 2000, she had poor feeding and a g-tube placement, and her height was twenty and three
quarter inches and she weighed eight pounds, two ounces.  (R. 211).

condition was found to have equaled was not specified, it appears that the applicable section was either 102.02(A) or 102.02(B)(1) as the reported findings do not appear related at all to listing 102.02(B)(2) or (3).

By my consideration, the record adequately supports the ALJ's finding of medical improvement in J.D.'s disabling impairment (coloboma with visual inattentiveness and/or blindness). While Plaintiff is correct that coloboma is a permanent impairment, an assertion with which the ALJ agrees, medical improvement is demonstrated by the 2007 statement of J.D.'s pediatric ophthalmologist, J. Bruce Hess, M.D., that J.D.'s visual acuity is corrected with glasses at 20/30 right eye and 20/400 left eye (R. 298. 404),[14] as well two statements he made in 2004 wherein he estimated J.D.'s visual acuity in the right eye at 20/70 and the left eye at 20/100 (R. 405-06). Given the requirement in listing 102.02 that the remaining vision in the better eye after best correction is 20/200 or less and J.D.'s vision in her better (right) eye is approximated to be between 20/30 and 20/70, it cannot be said that her vision difficulties meet or medically equal listing 102.02A.[15] This is further supported by the opinions of the state agency consultants who reviewed J.D.'s medical records in 2005 and 2007 and concluded that, while she suffered severe impairments, none met, medically equaled, or functionally equaled that of a listed impairment. (R. 315A, 319-21). Furthermore,

---

[14]While one statement of record is dated May 21, 2007, Dr. Hess stated that he last examined J.D. in October 2005 and she has failed to keep follow-up appointments. (R. 298).

[15]Even in the off chance that the subsection of listing 102.02 that J.D. equaled at the time of the CPD was subsection B, because she was four years old or older at the time of continuing disability review, subsection B of the 2000 version of listing 102.02 is inapplicable since she was no longer less than three years of age.

no physician (treating, examining, or otherwise) opined that J.D.'s condition met or equaled that of a listed impairment aside from the initial determination in 2000.

Although Plaintiff claims that the notation by the so-called medical consultant and the report from the school psychologist refute the ALJ's finding of medical improvement and in fact demonstrate otherwise, I disagree. Regarding the "medical consultant," the comment was made by an unidentified person and does not equate with a finding by the Commissioner that J.D.'s visual condition had not improved. Notably, while this individual asked if J.D.'s benefits could continue, he or she also acknowledged that J.D. was "currently doing better," and the ultimate finding of the medical consultant was that J.D. no longer met the requirements for disability. (R. 264). As for the school psychologist's report, she does recount that school records indicated that J.D. has a history of "learning difficulties dating back to first grade." (R. 564). That statement, however, simply does not support a finding that J.D.'s visual impairment continued to meet or medically or functionally equal listing 102.02. And, I tend to agree with the Appeals Council that the substantive portion of the report, as opposed to the background section of the report, does not relate back to the period adjudicated by the ALJ.[16]

In sum, substantial evidence supports the ALJ's finding that medical improvement in J.D.'s eye condition was demonstrated such that the condition no longer met or equaled listing 102.02 or functionally equaled any listing, and the Appeals Council correctly decided that the

---

[16]While the background portion of the report (R. 564) arguably may be within the relevant time frame, on its own it does not establish that J.D.'s condition met or equaled listing 102.02 or that it functionally equaled a listed impairment.

15

ALJ's findings of medical improvement and that listing 102.02 was not met or equaled were not contrary to the weight of the evidence.

By her second claim, Plaintiff urges that the ALJ had a heightened duty to develop the record because J.D. was not represented by counsel and he failed in this duty because he did not investigate the true nature of J.D.'s condition and/or did not request updated school records. Plaintiff also suggests that the ALJ should have ordered psychological testing or found out if the school had done such testing given her testimony that J.D. had problems with concentration and comprehension. Plaintiff also faults the ALJ for accepting J.D.'s testimony that she was not in any special classes and for not acknowledging the record evidence of speech difficulties and the school system's finding that J.D. was legally blind. (Doc. 10 at 5-7).

The Commissioner counters that Plaintiff fails to show that J.D. was prejudiced by the ALJ's conduct in developing the record. In particular, he notes that Plaintiff fails to explain why she was unable to provide additional school records to the ALJ or why she and her counsel did not submit any (besides the 2009 psychological evaluation) to the Appeals Council or this court. He also notes that the ALJ's statement that J.D. was in regular classes was simply made when recounting the child's testimony and he was aware that she attended special classes for her speech impairment. Lastly, the Commissioner urges that Plaintiff fails to provide any basis for her cursory contention that the ALJ should have ordered psychological testing, demonstrate that such was necessary for the ALJ to make an informed decision, and demonstrate prejudice in this regard. (Doc. 11 at 8-10).

16

It is well-settled that the ALJ has a basic duty to develop a full and fair record.

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  This obligation exists whether or

not the claimant is represented by counsel.[17]  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.

1997); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  In light of this obligation,

an ALJ must order a consultative examination when "such an evaluation is necessary for him

to make an informed decision."  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988)

(quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); *see also Wilson*, 179

F.3d at 1278.  Nonetheless, it is the claimant's burden of proving that she is disabled and she

is responsible for producing evidence in support of her claim.  *See Ellison*, 355 F.3d at 1276

(citing 20 C.F.R. § 416.912(a), (c)).  Furthermore, case law in this circuit requires the Plaintiff

to show some prejudice before a remand to the Commissioner for further development is

ordered.  *See Graham*, 129 F.3d at 1423.  In considering whether a remand is required, the

court should be guided by whether there are evidentiary gaps in the record that result in

unfairness or clear prejudice.  *Id.*

Upon consideration, I am unable to conclude that the ALJ erred in the manners urged

by Plaintiff.  First, while I agree with the Plaintiff that it would have been helpful had the ALJ

---

[17]Where the right of representation has not been waived, the ALJ's obligation to develop a full and fair record rises to a special duty which requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Graham*, 129 F.3d at 1422 (quoting *Cowart*, 662 F.2d at 735).  Here, Plaintiff waived the right to representation and does not contend that her waiver was ineffective.  *See* (R. 41, 608-09).

obtained J.D.'s school records from first grade forward,[18] I cannot conclude that the ALJ erred

in this regard and Plaintiff fails to demonstrate otherwise.[19]  On this matter, I note that

Plaintiff did not submit additional school records (aside from the 2009 report/evaluation) to

the Appeals Council or this court even though she had counsel when proceeding before both.

This seriously undercuts any claim of prejudice and Plaintiff makes no clear showing of

prejudice in any regard.  Likewise, to the extent Plaintiff suggests the ALJ should have

ordered psychological testing of J.D. in light of the concentration and comprehension

difficulties testified to by Plaintiff, there is no showing that such was necessary for a reasoned

decision in this case.  Significantly, as indicated above, Plaintiff must demonstrate some

prejudice in this regard before a remand is warranted.  By her argument and on this record, she

has failed to do so.  Finally, Plaintiff is simply incorrect that the ALJ reported that J.D. was in

regular education classes and did not attend special speech classes.  While the ALJ stated as

much in the decision, when doing so he was simply recounting J.D.'s testimony and not

making factual findings.  (R. 28).  And, the record reflects that the ALJ was aware that J.D.

attended special speech classes.  *See, e.g.* (R. 29).

---

[18]The evidence in this case includes school records dated 2003, 2004, and 2005.  *See*
(R. 195-202, 213-28, 236-41, 304-14).

[19]Plaintiff's contention that the school district found J.D. legally blind is not entirely
accurate.  Rather, the record to which she cites appears to be a form that J.D.'s doctor
completed for the exceptional student education department, wherein he reported that J.D. was
legally blind in her left eye.  (R. 586).

By her last claim, Plaintiff argues that the psychologist's report from 2009[20] and Dr. Cibran's February 2009 opinion establish that J.D.'s multiple impairments related to learning, speech, and vision are functionally equivalent to a listed impairment and predate the date of the ALJ's decision.  According to Plaintiff, the evidence demonstrates that J.D. has marked or extreme limitations in three domains, namely, in acquiring and using information, attending and completing tasks, and interacting and relating with others.  In support, Plaintiff urges a marked or extreme limitation in acquiring or using information based on J.D.'s intelligence and achievement test scores reported in the 2009 psychological evaluation.  According to her, J.D.'s results suggest she has borderline intellectual functioning and achievement and such results equate with marked or extreme limitations in this domain.  As for attending and completing tasks, Plaintiff contends J.D.'s concentration difficulties equate with marked limitations.  In support, Plaintiff points to her testimony that J.D. had difficulty with concentration and comprehension; the second grade teacher's report that J.D. was easily distracted or would overreact to even small sounds, visual stimuli, and movements; and the psychologist's notation that J.D. became sidetracked from activities and frequently interrupted the examiner or psychologist.  Lastly, regarding the domain of interacting and relating with others, Plaintiff contends that the psychologist's report that J.D. had difficulty speaking intelligibly and with adequate fluency, as well as a speech test that J.D. failed, establish a marked limitation in this domain.  Alternatively, Plaintiff urges that, at a minimum, the case should be reversed and remanded for further consideration.  (Doc. 10 at 7-13).

---

[20]In particular, Plaintiff primarily relies on the historical report from J.D.'s teacher and the results of academic and intelligence testing.

19

The Commissioner counters that substantial evidence supports the ALJ's finding that J.D.'s impairments did not functionally equal a listing and he cites evidence in support of the ALJ's findings in the challenged domains.  He also contends that Plaintiff fails to show that J.D.'s impairments caused marked limitations in two domains or an extreme limitation in one domain as of September 1, 2004, or at any time through May 16, 2008, the date of the ALJ's decision.  Regarding Plaintiff's reliance on the school psychologist's 2009 report/evaluation, the Commissioner maintains that it does not relate to the period considered by the ALJ and, in any event, it does not alter the substantial evidence that J.D. did not have a marked or extreme limitation in any of the challenged domains during the pertinent period or thereafter.  (Doc. 11 at 10-19).

The criteria for functional equivalence is set forth in 20 C.F.R. § 416.926a.  That regulation requires consideration of six domains, which are broad areas of functioning intended to capture all of what a child can and cannot do.[21]  20 C.F.R. § 416.926a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or marked limitations in two of the domains.[22]  *Id.* at § 416.926a(d).

---

[21]The adjudicator must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments.

[22]A "marked" limitation is defined as a limitation that interferes seriously with [the] ability to independently initiate, sustain, or complete activities, and is more than moderate.  20

By establishing a functional equivalence, a claimant is presumptively determined to be disabled regardless of her age, education, or work experience. 20 C.F.R. § 416.924. As indicated above, Plaintiff challenges the ALJ's findings with respect to the first three domains.

Upon careful review of the record in its entirely and the parties' respective arguments, I find that substantial evidence supports the ALJ's findings that J.D. did not have marked or extreme limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others such that her current impairments did not functionally equal that of a listed impairment.[23]  In short, there was simply nothing in the medical records before the ALJ that supports marked or extreme limitations in these domains.  Suffice it to say, aside from Dr. Cibran, none of J.D.'s doctors reported any marked or extreme limitations in functioning.  Nor did J.D.'s teachers, and they were asked to comment on each domain.  *See* (R. 227-28, 236-41, 304-314).  Tellingly, aside from the so-called medical consultant's notation questioning whether J.D.'s disability could continue, Plaintiff does not cite any record evidence in support of this claim.  Rather, she relies entirely on information contained in the school psychologist's report of 2009.  Even assuming that report/evaluation relates back to the period adjudicated by the ALJ, and I am not convinced

---

C.F.R. § 416.926a(e)(2)(I).  Such a limitation also means more than moderate but less than extreme.  It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  *Id*. An "extreme" limitation is reserved for the worst limitations and is defined as a limitation that interferes very seriously with [the] ability to independently initiate, sustain, or complete activities, but does not necessarily mean a total lack or loss of ability to function.  *Id.* at § 416.926a(e)(3)(I).

[23]The ALJ found that, since September 1, 2004, J.D. did not have any limitations in those domains.  (R. 30-33).

that it does, I do not read the psychologist's ultimate opinions as equating with marked and/or extreme limitations.  Consequently, I am unable to conclude that the Appeals Council erroneously decided that the ALJ's findings were not contrary to the weight of all the evidence such that a remand is required.

<div align="center">IV.</div>

The claimant, J.D., undoubtedly has visual, speech, and physical difficulties and experiences some difficulty academically.  However, given the arguments on appeal and consideration of all record evidence, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
10th day of August 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<div align="center">NOTICE TO PARTIES</div>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a

district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable Richard A. Lazzara, United States District Judge
Counsel of Record